UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 3:18-cr-170 (VLB) |
| | : | |
| MUHAMMAD SHAHBAZ | : | |
| | : | JULY 31, 2020 |
| | : | |
| | : | |
| | : | |
| | : | |

ORDER ON DEFENDANT'S MOTION FOR INDICATIVE RULING
PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 37, [ECF NO. 111]

The Defendant, Muhammad Shahbaz, brings this motion for a ruling indicating whether the Court would be inclined to grant Mr. Shahbaz's motion for compassionate release, [ECF No. 108], if jurisdiction were returned to this Court. For the following reasons, the Court denies this motion and the motion for compassionate release.

I. BACKGROUND

Mr. Shahbaz, a citizen of Pakistan and illegal alien, was arrested in New Jersey on July 31, 2017, following a lengthy investigation of a food stamp fraud scheme at WB Trade Fair Grocery, LLC ("WB Market"), a convenience store in Waterbury, Connecticut. [ECF No. 89 (Pre-Sentencing Report) ¶ 5]. Between November 2014 and June 2016, Mr. Shahbaz and other employees allowed customers to exchange food stamps at a markup for cash and ineligible items. When an individual sought to exchange cash for their food stamps (an unlawful transaction known as "trafficking") or use them to purchase ineligible items, Mr.

1

Shahbaz would charge them approximately double the value.  *Id.* ¶¶ 11, 14, 20.  The loss suffered by the United States Department of Agriculture's Food and Nutrition Service was estimated at $1,550,756.  *Id.* ¶ 28.

On August 28, 2017, Mr. Shahbaz appeared before the Hon. William I. Garfinkel, United States Magistrate Judge, and was released on a $50,000 non-surety bond co-signed by his brother and sister-in-law, who also agreed to serve as third-party custodians.  [ECF No. 89 ¶ 5].  During his period of pretrial release, Mr. Shahbaz resided with them in Jersey City, New Jersey.  According to his supervision officer at the U.S. Pretrial Services Office, Mr. Shahbaz was compliant with the terms of his release.  *Id.* ¶ 6.

Jury selection was scheduled for December 18, 2018.  On December 11, 2018, however, Mr. Shahbaz filed a Motion to Continue Jury Selection.  [ECF No. 60].  The primary reason for this request was that Mr. Shahbaz's sister-in-law, who had been assisting with transportation and interpretation as well as serving as his third-party custodian, had traveled to Pakistan for a wedding and had only informed Mr. Shahbaz's counsel the previous day that she would not be returning until January 12, 2019, nearly one month later than originally expected.  *Id.* at 2.  The Court granted the motion and continued jury selection to May 21, 2019.  [ECF Nos. 63, 65].

On June 14, 2019, Mr. Shahbaz entered a Petition to Enter a Plea of Guilty to one count of food stamp fraud.  [ECF No. 78].  In his Petition, Mr. Shahbaz stated: "I double-charged food stamp customers.  I knew this was wrong at the time, but I thought the penalty, if it was discovered, would be minor and not the consequences

I am facing now." *Id.* Under the plea agreement, the parties stipulated that Mr. Shahbaz's base offense level under U.S.S.G. § 2B1.1(a)(2) was 6. That level was increased by 16 levels under U.S.S.G. § 2B1.1(b)(1)(I) to reflect losses of more than $1,500,000 but less than $3,500,000. Three levels were subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility. Mr. Shahbaz's total offense level was 19. The parties agreed that Mr. Shahbaz fell within Criminal History Category I, resulting in a range of 30 to 37 months' imprisonment, a fine of $15,000 to $150,000, and a supervised release term of one to three years. U.S.S.G. § 5E1.2(c)(3). Mr. Shahbaz also agreed to make restitution in the amount of $1,550,776, paid jointly and severally with other individuals convicted and sentenced for engaging in the same food stamp fraud scheme. [ECF No. 79 (Plea Agreement) at 3, 5].

Mr. Shahbaz was sentenced by this Court on December 4, 2019. [ECF No. 98]. Arguing that he was a first-time offender whose participation in the scheme was comparatively minor and who would likely be deported, he requested a probationary sentence with a special condition of six months of home confinement. [ECF No. 94 (Def't Sentencing Mem.) at 3]. Mr. Shahbaz also cited his history of full-time employment and his compliance with the conditions of his release. *Id.* at 20.

However, the Court expressed concern that during his pretrial release, Mr. Shahbaz was employed at Hoboken Dollar Variety—a store to which checks drawn from WB Market's account were regularly written at the time the food stamp fraud was occurring. [ECF No. 95 (Gov't Sentencing Mem.) at 8; ECF No. 105 (Tr. of Sentencing) at 15]. The Government believed that the cash from these checks,

3

which were written for thousands of dollars apiece, was brought to WB Market to provide to customers in illegal food stamp transactions. [ECF No. 95 at 8]. Another market that received checks from WB Market during this period, Sunny Super Foods, was operated by Mr. Shahbaz's brother and third-party custodian, who had also worked at WB Market while the food stamp fraud was taking place. *Id.* Mr. Shahbaz has indicated that if he were to be granted early release, and then released by the immigration court pending the outcome of his removal proceedings, he would likely resume his living arrangements in Jersey City, New Jersey. [ECF No. 108-1 at 14].

The Court sentenced Mr. Shahbaz to 33 months' imprisonment, a term of three years supervised release if he is not deported, and restitution of $1,550,756. [ECF No. 99]. The Court also denied Mr. Shahbaz's request to self-surrender at a later date, and he was remanded to the custody of the Bureau of Prisons. [ECF No. 105 (Tr. of Sentencing) at 51-52].

On December 17, 2019, Mr. Shahbaz filed a Notice of Appeal. [ECF No. 102].

Since sentencing, Mr. Shahbaz has been incarcerated at Moshannon Valley Correctional Institute in Philipsburg, Pennsylvania. On May 1, 2020, Mr. Shahbaz filed a written request with the warden petitioning for release to home confinement in light of the ongoing COVID-19 pandemic. [ECF No. 108-2]. On May 5, 2020, the warden denied Mr. Shahbaz's request because he is a deportable alien and

therefore "ineligible for community based programs to include halfway house, home confinement, and compassionate releases …."[1] [ECF No. 108-3].

On July 8, 2020, Mr. Shahbaz filed an Emergency Motion to Reduce Sentence pursuant to the First Step Act, [ECF No. 108], as well as a Motion for Indicative Ruling pursuant to Rule 37 of the Federal Rules of Criminal Procedure. [ECF No. 111]. He argues that because he suffers from obesity, type 2 diabetes, and hypertension, and has a past exposure to tuberculosis, he is at greater risk for serious health complications if he were to contract COVID-19. [ECF No. 108-1 at 2].

## II. LEGAL STANDARD

### A. Jurisdiction and Indicative Ruling

"The filing of a notice of appeal is an event of jurisdictional significance," which "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Under these circumstances, this Court is without authority to "rule on any motion affecting an aspect of the case that [is] before the [Court of Appeals]." *Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002).

Federal Rule of Criminal Procedure 37 anticipates precisely the jurisdictional issue present here. Rule 37 provides, in relevant part, that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has

---

[1] It appears to the Court that the warden denied Mr. Shahbaz's petition based on Bureau of Prisons regulations. *See* BOP Program Statement 7310.04 at 10; BOP Program Statement 7320.01 at 7 (early release prohibited for inmates with pending orders of removal).

been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed R. Crim. P. 37(a). "Reflecting this Circuit's longstanding approach, … this rule allows district courts to deny, but not to grant, a motion for which it lacks jurisdiction due to a pending appeal." *United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *2 (S.D.N.Y. Apr. 10, 2020).

### B. Reduction of Sentence

The First Step Act of 2018 allows federal prisoners to petition courts directly for reduction of their sentences. A court may not modify a term of imprisonment once it has been imposed unless the defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The defendant must show that "extraordinary and compelling reasons warrant such a reduction." *Id.* The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission" and the Court must consider "the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable." *Id.*

At Congress's direction, the Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t). As other courts have recognized, the Sentencing Commission guidance has not yet been updated to reflect the liberalization of the procedural

requirements. *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. Jan. 8, 2020). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling circumstances" when:

> **(A) Medical Condition of the Defendant.--**
>
> **(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. [or]**
>
> **(ii) The defendant is—**
>
> > **(I) suffering from a serious physical or medical condition,**
> > **(II) suffering from a serious functional or cognitive impairment, or**
> > **(III) experiencing deteriorating physical or mental health because of the aging process,**
>
> **that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.** U.S.S.G. § 1B1.13, Commentary Application Note 1(A).

Commentary Application Note 1(D) contains a residual clause to provide relief for other "extraordinary and compelling reasons" as determined by the Director of the Bureau of Prisons. However, the defendant bears the burden of showing that he is entitled to a sentence reduction. *Ebbers*, 432 F. Supp. 3d at 426.

### III. ANALYSIS

A. <u>Jurisdiction and Indicative Ruling</u>

Before considering the merits of Mr. Shahbaz's motion, the Court must first address 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement. The Court agrees with the parties that Mr. Shahbaz exhausted his administrative remedies before filing

the instant motion.  Mr. Shahbaz submitted his compassionate release application to the warden at Moshannon Valley on May 1, 2020, it was denied four days later, and more than thirty days have elapsed since his initial request.

B. <u>Reduction of Sentence</u>

The Court notes that Mr. Shahbaz's motion may be futile because of his immigration status.  Federal regulations specifically exclude Immigration and Customs Enforcement detainees from eligibility for early release.  28 C.F.R. § 550.55(b).  In a June 25, 2020 letter, the warden at Moshannon Valley confirmed that "Immigration and Customs Enforcement Officials lodged a detainer on February 27, 2020, for deportation proceedings."  [ECF No. 108-4].  Therefore, Mr. Shahbaz may be ineligible on this basis irrespective of the Court's findings.  However, the Court will address the merits of his petition.

The Court has concluded in the past that "extraordinary and compelling" reasons for release may exist beyond those contained in the commentary to U.S.S.G. § 1B1.13.  *United States v. Jepsen*, No. 3:19-cv-00073 (VLB), 2020 WL 1640232 at *4 (D. Conn. Apr. 1, 2020).  The United States Centers for Disease Control and Prevention ("CDC") has advised that some populations have an especially heightened risk of becoming severely ill if they contract COVID-19.  Coronavirus Disease 2019 (COVID-19): People at Increased Risk, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.  Mr. Shahbaz's medical records indicate that he suffers from two conditions the CDC considers risk factors for severe complications: obesity and type 2 diabetes.  [ECF No. 110 at 16].  He has also been diagnosed with high blood pressure, which the CDC has advised may create an increased risk of serious illness.  [ECF No. 110

at 5 (five-day blood pressure average completed on April 27, 2020 was 148/98)]. The CDC recommends that individuals suffering from these conditions take medications for any underlying health conditions exactly as described and follow their healthcare provider's recommendations for nutrition and physical activity. Coronavirus Disease 2019 (COVID-19): People at Increased Risk, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

This Court and others have recognized that "an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their medical history … in combination with other factors" may be grounds for relief. *United States v. Goins*, No. 3:05-cr-292 (VLB), 2020 WL 4194534 at *3 (D. Conn. July 21, 2020). *See also Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350 at *13 (D. Conn. May 12, 2020) ("… approximately 25 out of 48 COVID-19 related motions for compassionate release have been granted in this District alone since the crisis began."). However, "[a]n inmate's current diagnosis of a chronic condition does not constitute an 'extraordinary and compelling basis' for compassionate release, both under the U.S. Sentencing Commission guidance and when these terms are read in the plain sense." *Jepsen*, 2020 WL 1640232 at *4.

Mr. Shahbaz is not suffering from a terminal illness or one that makes it unfeasible to care for him. According to guidance from the CDC, his body mass index ("BMI") of 33.4 classifies him as obese, but in the lowest category of obesity. A BMI of 40 or higher is necessary to be considered extremely or severely obese. Defining Adult Overweight and Obesity, CDC, *available at*

https://www.cdc.gov/obesity/adult/defining.html.  In denying Mr. Shahbaz's initial request for early release, the warden at Moshannon Valley stated that Mr. Shahbaz has "good control of [his] conditions."  [ECF No. 108-3].  While he did not take medication for his diabetes before being incarcerated, [ECF No. 89 ¶ 67], the warden indicated that he is now "following the prescribing physician's treatment plan." [ECF No. 108-3]. Additionally, Mr. Shahbaz's hemoglobin A1C test result of 6.6 percent indicates that he is just over the CDC's 6.5 percent threshold for a diabetes diagnosis.  According to the CDC, the goal for most people with diabetes is an A1C result of 7 percent or less.  Diabetes: All About Your A1C, CDC, *available at* https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html.  This reinforces that Mr. Shahbaz's condition is under control.  The American Diabetes Association has stated that "your risk of getting very sick from COVID-19 is likely to be lower if your diabetes is well-managed."  COVID-19 FAQ, American Diabetes Association, *available at* https://www.diabetes.org/covid-19-faq.   While Mr. Shahbaz's blood pressure is high by either of the standards used by the CDC, the link between hypertension and COVID-19 complications remains somewhat murky.  The CDC has advised that people with high blood pressure "might be at increased risk" of becoming seriously ill from COVID-19, About High Blood Pressure, CDC, *available at* https://www.cdc.gov/bloodpressure/about.htm, but has declined to make a more definitive statement about the connection, although the World Health Organization stated in February 2020 that individuals with pre-existing conditions including high blood pressure and diabetes "appear to be more vulnerable." Coronavirus disease 2019 (COVID-19) Situation Report – 36, World Health

Organization, *available at* https://www.who.int/docs/default-source/coronavirus/situation-reports/20200225-sitrep-36-covid-19.pdf.

Mr. Shahbaz has also failed to take advantage of opportunities to improve his health and consequently mitigate his risk of illness. At Moshannon Valley, Mr. Shahbaz was advised to adhere to a "diet for health" regimen. He declined to do so. [ECF No. 110 at 70]. The witnessed statement that Mr. Shahbaz signed states that failing to follow this healthy diet can have negative impacts on both blood sugar and blood pressure. *Id.* Mr. Shahbaz also recorded a positive PPD test while at Moshannon Valley, indicating exposure to tuberculosis or a "latent tuberculosis infection." *Id.* at 23. The World Health Organization has advised that "it is anticipated that people ill with both TB and COVID-19 may have poorer treatment outcomes, especially if TB treatment is interrupted." COVID-19: Considerations for tuberculosis (TB) care, World Health Organization, *available at* https://www.who.int/docs/default-source/documents/tuberculosis/infonote-tb-covid-19.pdf. However, Mr. Shahbaz refused treatment after receiving his positive PPD test. [ECF No. 108-3 at 1; ECF No. 110 at 69]. It is difficult for the Court to reconcile Mr. Shahbaz's stated concern for his health with his cavalier attitude toward these straightforward treatment protocols.

Mr. Shahbaz relies on *United States v. Rivera*, No. 3:13-CR-71-1 (VLB), 2020 WL 3186539 (D. Conn. June 15, 2020), as a persuasive example of a diabetes-related compassionate release, particularly because the Court acknowledged that even individuals whose diabetes is under control remain vulnerable to serious complications. *Id.* at *5. However, several factors distinguish that case from the

instant one.  Mr. Rivera was morbidly obese and was sufficiently ill that the Bureau of Prisons designated him to a federal medical center, FMC Devens.  *Id.* at *2.  According to the Bureau of Prisons, there were 41 inmate infections, 5 staff infections, and 2 inmate deaths at FMC Devens as of June 12, 2020.  At the time the Court granted Mr. Rivera's compassionate release motion, it ranked fourth in the country among BOP facilities for active COVID-19 infections.  *Id.* at *5.  Mr. Rivera also had already served 104 months out of a 116-month sentence, whereas Mr. Shahbaz has only served 8 months of his 33-month sentence.  *Id.* at *6.  Taking these factors into consideration, the Court finds that Mr. Rivera's poor health and the prevalence of COVID-19 in his facility created a situation far more perilous than Mr. Shahbaz now faces.

Significantly, Mr. Shahbaz acknowledges that there have been no reported COVID-19 cases at Moshannon Valley.  [ECF No. 108-1 at 11].  Mr. Shahbaz also claims in his motion that his medical conditions render him "immunocompromised."  [ECF No. 108-1 at 9].  However, none of Mr. Shahbaz's diagnoses are included in the CDC's list of conditions and treatments that can compromise a person's immune system.  If You Are Immunocompromised, Protect Yourself From COVID-19, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html.  Moshannon Valley has developed a COVID-19 protocol consistent with Bureau of Prisons guidance.  The Defendant has failed to demonstrate that the facility's response is inadequate to manage the pandemic within that institution, or that Moshannon Valley is unable

to adequately treat Mr. Shahbaz.  Mr. Shahbaz's medical situation may present challenges in the correctional setting, but it is not extraordinary or compelling.

The Court therefore finds that the totality of the circumstances in Mr. Shahbaz's case do not merit a reduction in sentence.  This is especially so given that by failing to follow the "diet for health" regimen and receive treatment following his positive PPD test, Mr. Shahbaz has chosen not to take reasonable steps that would alleviate the risks to his health.  A defendant may not create conditions placing him at elevated risk for COVID-19 complications and then use that heightened risk as a basis for early release.

## IV. CONCLUSION

Given his medical history and the lack of active COVID-19 infections at Moshannon Valley, the Court DENIES Mr. Shahbaz's motions, [ECF Nos. 108, 111], for failing to establish extraordinary and compelling reasons for the requested modification.

    IT IS SO ORDERED

    _____/s/_____

    Hon. Vanessa L. Bryant
    United States District Judge

Dated at Hartford, Connecticut: July 31, 2020